JOSEPH HACKMANN, Respondent, v. JOSEPH GUTWEILER, Appellant.

St. Louis Court of Appeals, April 7, 1896.

1. **Real Estate Broker**: EMPLOYMENT TO OBTAIN LOAN: EXTENT OF OBLIGATION. A broker, employed to obtain a loan on the security of real estate, does not fulfill his engagement by merely finding a person who is able and willing to make the loan on the security offered; but he must, if his client is willing to proceed with the transaction, further produce either such person or a contract binding the latter to make the loan. Such production of the person or of the contract thus binding him is, however, not necessary, if the client refuses to accept the loan or wrongfully discharges the broker after such person has been found by him.

2. ———: ———: ———. But *held*, by BIGGS, J., that if the client is willing to proceed, the broker must produce the person who is able and willing to make the loan, and that the production of a contract binding the latter to make it is not sufficient.

3. **Practice, Trial**: IMPROPER COMMENTS BY COURT AND COUNSEL IN REGARD TO EVIDENCE. When the defendant offered to read the testimony of an absent witness as contained in an application for a continuance, the plaintiff's attorney remarked in the hearing of the jury that the document was merely an affidavit, and the court replied that it meant that the witness, if present, would testify to what was con-

tained in the paper. *Held, per curiam,* that the remarks of both court and counsel were improper, but that, under the circumstances of the case, they were not prejudicial.

*Appeal from the St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*L. Frank Ottofy* for appellant.

(1) The statement or account sued upon does not allege facts sufficient to constitute a cause of action. It fails to allege whence the loan was to come. The plaintiff must allege and prove that he had produced a lender ready and able to loan the money. *Hayden v. Grillo,* 26 Mo. App. 289, 293, 294; *Story v. Ins. Co.,* 1 Mo. App. 678. He must disclose the party loaning the money or produce his contract. *Hayden v. Grillo,* 35 Mo. App. 647, 655; 42 Mo. App. 1, 3. (2) Instruction number 2 for plaintiff is erroneous. The simple fact of finding a party willing and ready to loan the money is not sufficient. He must produce a party ready, able and willing, to loan the money. *Gaty v. Foster,* 18 Mo. App. 639; *Phister v. Grove,* 48 Mo. App. 455; *Gellatt v. Ridge,* 117 Mo. 553, 560.

*E. T. Farish* for respondent.

BIGGS, J.—This action was commenced before a justice of the peace on the following account:

"ST. LOUIS, Mo., Dec. 4, 1894.

"Joseph Gutweiler, debtor to Joseph Hackmann, for making a
loan on his property, 4588 North Market street, for........$3,000 00
"Commission, 2½........................................... 75 00."

The plaintiff recovered before the justice and also in the circuit court. The defendant by successive appeals has brought the case here for review.

It is conceded that on the twenty-third day of November, 1894, the defendant engaged the plaintiff to negotiate for him a loan of $3,000, to secure which the defendant was to give a mortgage on the real estate mentioned in the statement. He agreed to pay plaintiff for his services in effecting the loan two and one-half per cent of the amount. The parties differ as to the time within which the loan was to be made, and what subsequently occurred in reference to it.

The plaintiff's evidence tended to prove that the defendant represented that he owed $2,500, due December 1, and secured by a deed of trust on the property mentioned; that he wished to negotiate a new loan on the property for $3,000 with which to take up the old debt, and also pay some outstanding debts amounting to about $500; that he would not need the money until the twenty-ninth or thirtieth of the month, and that the plaintiff could have until that time to get the money; that the plaintiff immediately made inquiries among his business acquaintances concerning the loan, and on the next day or the day following he got the promise of the money from Mr. Spaunhorst; that on the morning of the twenty-sixth he notified the defendant of the arrangement which he had made, and requested him to furnish an abstract of the title to the property, which the defendant failed to do, and that he subsequently negotiated the loan from another party. It also appeared that $2,000 of the money which Spaunhorst expected to loan belonged to the St. Joseph Society, and that, under the rules of the society, its funds could not be loaned until the security was approved by a committee appointed by it for that purpose. However, Spaunhorst testified that he had other money, besides that belonging to the St. Joseph Society, sufficient in amount to cover the required loan,

and that for this reason his promise to the plaintiff was made unconditionally.

On the other hand, the defendant testified that it was agreed that plaintiff should notify him not later than the morning of the twenty-sixth whether he could get the money for him; that defendant went to plaintiff's office about noon of that day and notified him that he could not wait longer, that the old debt would mature in a few days, and that he (defendant) would have to look elsewhere for the money. The defendant also introduced evidence which tended to prove that the committee appointed by the St. Joseph Society did not visit the property until the afternoon of November 26.

At the instance of the plaintiff the court instructed the jury as follows:

"If the jury believe and find from the evidence that on or about the twenty-fourth day of November, 1894, the defendant employed the plaintiff to secure a loan for $3,000 on his property, number 4588, N. Market street, in the city of St. Louis, and promised plaintiff to allow and pay him a commission of two and one half per cent, or $75, if plaintiff would within one week from that time procure such loan for him, and that thereafter and within such time plaintiff found a party who had said sum of money, and was willing and ready to loan the same on said property of defendant, and that plaintiff was ready and willing to go on and complete said loan, but that defendant failed and refused to accept said money after plaintiff had effected said loan as aforesaid, then the jury are instructed that plaintiff has earned his commissions as aforesaid and was entitled to recover the same from defendant, and the jury by their verdict will so find, unless you also find from the evidence that, before the plaintiff had made any endeavors or performed any service with the

view and for the purpose of effecting such loan, the defendant revoked the employment.

"The jury are instructed that one of the questions or issues submitted to them in this case is whether the plaintiff had found a party ready and willing to loan $3,000 on the property in question. And if they believe from the evidence that, independent and outside of the money of St. Joseph's Society, spoken of by the witnesses, the plaintiff applied to Henry J. Spaunhorst for the loan of said amount of $3,000, and that he had the money and was willing and ready to loan the same on the property in question, and that he so informed plaintiff, and plaintiff reported to defendant that he had the money promised, and that he (the defendant) should hand in his deed that he (plaintiff) might have the title to the property examined, then the jury are instructed that it is immaterial whether the St. Joseph Society had the money ready and was willing to loan the same on the property in question.

"If the jury believe and find from the evidence that on or about the twenty-third or twenty-fourth of November, 1894, the defendant employed the plaintiff to procure a loan of $3,000 on his property in question, and promised and agreed with plaintiff that he might have a week thereafter to effect such loan, and in the meantime, and on the twenty-sixth day of November, the plaintiff had made endeavors and performed services with the view and for the purpose of effecting such loan, then the jury are instructed that plaintiff was entitled to such time within which to complete such loan, and the defendant was not at liberty to set aside such employment or make other or different arrangements for such loan within such time without the knowledge or consent of plaintiff; and that the fact, that defendant may have afterward, and within that time aforesaid, effected such loan on said property

and paid commissions therefor to another party, does not prevent or preclude the plaintiff from recovery in this case.' And the jury in considering of their verdict will disregard such evidence as a defense to this suit."

The defendant asked the court to instruct the jury, in substance, that unless the defendant agreed to give plaintiff until the last day of November to make the loan, then the defendant had a right to revoke plaintiff's authority at any time before he had *produced* a party who was ready, willing and able, to make the loan. The court modified the instruction by erasing the word "produced" and inserting the word "*secured*." The defendant asked the further instruction that, if it was agreed that the plaintiff was to secure the loan on or before the morning of November 26, and if on the morning of that day the plaintiff had not secured *and produced* to the defendant a party willing, etc., to make the loan, then the finding ought to be for defendant. The court erased the italicized words, and after the word loan inserted the following: "And that defendant then revoked the said employment." The defendant objected and excepted to the plaintiff's instructions, and he also excepted to the modification of those asked by him.

The contract of a real estate broker for the sale of property is that he will secure and produce a purchaser who is willing, ready and able, to make the purchase upon the authorized terms. *Hayden v. Grillo*, 26 Mo. App. 289; s. c., 35 Mo. App. 647; *Vandyke v. Walker*, 49 Mo. App. 381. The same rule should govern in engagements by brokers for the negotiation of loans. It is not sufficient, in such cases, that the broker has found a person who has the requisite sum of money and is willing to loan it on the security offered; but, when his client is informed of this and he signifies a willingness to proceed with the business, it is then the

further duty of the broker to produce the lender, *or a contract binding the latter to loan the money*, and until he does, his contract is not performed. The clause in italics expresses the views of my associates. In that I do not concur. But these latter duties become unnecessary and useless, if the borrower refuses to accept the money or revokes the authority of the broker. This is the theory of the plaintiff's instructions, and also of those of the defendant as modified by the court, and, as there was evidence to authorize them, we will have to overrule the various objections urged against them by defendant's counsel.

When the defendant offered to read the testimony of an absent witness as contained in an application for a continuance, the attorney for plaintiff remarked in the hearing of the jury that the document was merely the affidavit of the absent witness, and the court replied "that it meant that, if this witness were in court, he would testify to what is contained in the paper." The defendant objected and excepted to these remarks, and he now insists that his case was prejudiced on account of them.

We think that the remarks of both court and counsel were improper (*Woolwine v. Bick*, 39 Mo. App. 495), but under the circumstances of the case were not prejudicial. The testimony of Hilger was to the effect, that he and John H. Willie were appointed as a committee by the St. Joseph Society to inspect the defendant's property with a view of making the loan in question; that they did inspect it on the afternoon of November 26; that they made their report on that day, and that it would require several days thereafter to examine the title and prepare the necessary papers. The defendant's counsel seems to misapprehend the theory of the plaintiff's case. The plaintiff does not contend that he made arrangements with Spaunhorst

to borrow money which belonged to the St. Joseph Society, but only that Spaunhorst preferred to make up a part of this loan out of the funds of the society, provided it could be so arranged, and, if it could not, then he was to let the plaintiff have other moneys which he then had on hand. The plaintiff did not attempt to controvert the facts testified to by both Hilger and Willie, and it was not necessary for him to do so; hence, we can not conceive how the defendant's case was prejudiced by the remarks of the court.

Other questions are argued in the briefs which we do not deem worthy of discussion, and we will, therefore, affirm the judgment. All the judges concur.