Albert v. Van Frank.

# LEON J. ALBERT, JR., Respondent, v. P. R. VAN FRANK, Appellant.

## St. Louis Court of Appeals, March 4, 1901.

1. **Bill of Exceptions, Time of Filing**: PRACTICE, APPELLATE. An appellate court is not restricted to the bill of exceptions itself to ascertain whether or not an order was made by the trial court extending the time in which it might be filed.

2. ——: ——: ——: RECORD: ORDER. It may look to ,the record, outside of the bill, for information as to what orders were made concerning it and when it was filed.

3. **Bill of Sale**: CHATTEL MORTGAGE. In the case at bar, the so-called bill of sale, made by the Dunlops to Albert, having been executed to secure or indemnify the latter, is a chattel mortgage.

4. ——: ——: POSSESSION. And as possession of the property did not accompany the instrument, it was void as to every one except the parties to it (Revised Statutes 1899, section 3404).

5. **Fraud**: RELATIONSHIP OF PARTIES: EVIDENCE. The relationship of the parties, in the case at bar, is not sufficient in itself to avoid the transaction for fraud, but that circumstance is material along with other evidence in the case to establish the real motive in which defendant acted.

Appeal from Cape Girardeau Court of Common Pleas.—*Hon. Frank Burroughs,* Judge.

AFFIRMED.

#### STATEMENT OF THE CASE.

The plaintiff began this action before a justice of the peace to replevy, from the defendant, a horse and trap alleged to be of the value of $100. The judgment being in his favor, the cause was appealed by the defendant to the court of common pleas of Cape Girardeau county and from there he appealed to this court.

The defendant is the father of Mary C. Dunlop, the wife of Frank H. Dunlop. On the twelfth day of November, 1898, a promissory note was executed by the said Frank H. Dunlop, for himself and as attorney in fact for his wife, to the plaintiff and by him indorsed to the Sturdivant Bank of Cape Girardeau. The evidence discloses that Albert was an accommodation indorser for the Dunlops who received the money on the note. Subsequently Albert paid it. At the time of the execution of the note, a bill of sale was executed of the horse and trap in controversy to Albert in the same manner; namely by Dunlop for himself and as attorney in fact for his wife. He also acknowledged it in both capacities. The certificate indicates although the fact is not absolutely proven, that the acknowledgment was taken by the grantee himself. The official capacity in which he acted when taking it is not disclosed either by his certificate or other evidence. The instrument was filed for record on the eighth day of February, 1899. On January 26, 1899, a livery firm, by the style of Kage, Nichols & Kimmel, recovered judgment before a justice of the peace against Dunlop and wife for the sum of $132.20 for the board and care of the horse and the care of the trap. The judgment was declared a lien on the property and the same ordered sold to satisfy it. On the twenty-fourth day of January, the same plaintiff recovered another judgment against the same defendants before the justice for the sum of $89.23. This was an ordinary judgment in assumpsit. The first of these judgments (and perhaps the second) was assigned by Kage, Nichols & Kimmel to the defendant, P. R. Van Frank, in writing. The writing was filed with the justice of the peace on the fourth day of February, 1899, but not attached to the judgment itself. On the last-named date, executions were issued by the justice on both the judgments indorsed to the use of P. R. Van Frank, assignee of Kage, Nichols & Kimmel, and on the eighteenth day of said

month the horse and trap were sold at public vendue and pur-
chased by the defendant. This action was brought to recover
the possession of them by Albert.

The statement is in the usual form. The answer denied
that the defendant wrongfully detained the property, and
charged that he was the owner and entitled to the possession of
it. There was a replication attacking the bona fides of the as-
signment of the judgment on the ground that the judgment
creditors understood, when they made the assignment, that
Dunlop had paid and satisfied them; further averring that the
purchase at the execution sale by Van Frank and the taking
of the assignment were all pursuant to a fraudulent purpose to
defeat the plaintiff's claim and secure the property for the use
of Dunlop. The defendant admits that he knew all along of
the bill of sale or mortgage to the plaintiff. There was evi-
dence tending to prove the facts charged in the replication;
namely, that the purchase of the judgments by Van Frank and
of the property at the execution sale was colorable and really for
the use and benefit of Dunlop. And evidence, also, which
tended to show that Dunlop furnished the money or agreed to
reimburse Van Frank.

The following letters were introduced, written by Dunlop
over the signature of Van Frank which the latter did not deny
having authorized:

"February 3, 1899.
"Messrs Kage, Nichols & Kimmel.

"When Mr. Dunlop arranges the amount I will pay the
costs in execution of No. 508 and 507, so you can assign the
claims to me at once.

Vol 87 app—33

"P. R. Van Frank."

"February 16, 1899.

"Henry Kopper.

"Here is the bond in the Kage, Nichols & Kimmel horse and trap matter.

Yours,

"P. R. Van Frank, per D."

There was likewise testimony to the effect that Dunlop transacted all the business which resulted in the transfer of the judgments to Van Frank. Nichols, one of the judgment creditors was put on the stand by the appellant. He testified that the judgments were settled and satisfied by Dunlop and that up to that time nothing had ever been said about them by the defendant. He said "The proposition was made in about this way: Mr. Dunlop made me a proposition to give me some money in liquidation of these claims; and when the thing was consummated, he said Mr. Van Frank would give me a check for that amount." Dunlop also swore that he admitted in the justice's court he expected to repay his father-in-law for the money he had advanced in discharge of the judgments. After these transactions, Dunlop and wife continued to use the horse and trap, more or less.

*Robert L. Wilson* for appellant.

Appellant contends that the assignment of the judgments by Kage, Nichols & Kimmel was a good, equitable assignment, and as the executions were issued before the assignments, the purchaser had a right to receive the proceeds. And that the purchaser of the judgment had the right to use the name of plaintiffs in the judgment in enforcing the executions. The statutory mode of assignment of judgments is merely cumulative not exclusive. Chemical Bank v. Buckley, 68 Mo. App.

327; 2 Black on Judgments, secs. 945, 946, 948; Freeman on Judgments (2 Ed.), sec. 421; Burgess v. Cave, 52 Mo. 43; Wise v. Loring, 54 Mo. App. 258. The assignee of a judgment for value has all the legal remedies for enforcing it which the original judgment had. Lionberger v. Baker, 14 Mo. App. 353.

No brief furnished for respondent.

GOODE, J.—We have already passed on the question of whether the bill of exceptions was filed in time, but the respondent has renewed it in his brief. We adhere to our previous ruling on the point. An appellate court is not restricted to the bill of exceptions itself to ascertain whether or not an order was made by the trial court extending the time in which it might be filed, as the respondent contends. It may look to the record outside of the bill for information as to what orders were made concerning it and when it was filed. State v. Thompson, 149 Mo. 439; Real Estate Ass'n v. Refrigerator Transit Co., 127 Mo. 499. But the original bill in this case, which is before us, states explicitly, immediately over the signature of the judge, that it was filed within the time allowed. Nor do we find anything *de hors* the bill to contradict this recital. On the contrary, it is fully corroborated by the record. The time allowed for filing in the first instance was made in the order allowing the appeal on the thirtieth day of September, 1899. Sixty days from that date were granted. Afterwards, on the sixth day of November, the same being the sixth day of the term at which the cause was tried, the court extended the time to sixty days from that date. On the fifth day of January, 1900, and within the currency of the last order, the time was again extended by an order of the judge of the court, to thirty days. The filing occurred on the thirtieth day of

January, which was within the limit.   The entire record is, therefore, before us for review.

The so-called bill of sale made by the Dunlops to Albert, having been executed to secure or indemnify the latter, is a chattel mortgage.   Johnson v. Houston, 17 Mo. 59; Wood v. Matthews, 73 Mo. 477; Quick v. Turner, 26 Mo. App. 29. As possession of the property did not accompany the instrument it was void as to every one except the parties to it.   R. S. 1899, sec. 3404; Bank v. Bowers, 134 Mo. 432; Mercantile Co. v. Perkins, 63 Mo. App. 310; State v. Sitlington, 51 Mo. App. 252.   The mere fact that the appellant had knowledge of its existence would not defeat his rights as a purchaser for a valuable consideration of the lien judgment prior to the time of its recording, nor of his purchase of the property at the execution sale thereunder.   But he must have been an actual purchaser for himself, not an agent for Dunlop.

The question to be determined, then, was, whether Van Frank acted for himself in these transactions and bought for his own use and benefit, or whether they were for the fraudulent purpose of defeating the rights of the creditors of Dunlop, and particularly the respondent Albert.   The court submitted this question to the jury by the following instruction:

"The court instructs the jury that if you find from the evidence that Van Frank bought the liverymen's judgment with his own money and for his own use and benefit, and issued an execution thereon and bought the property in at a constable's sale, then, the lien of the liverymen, Kage, Nichols & Kimmel, being better and superior to the bill of sale to Albert, Van Frank would, therefore, obtain the best title, and your verdict should be for him.   But, on the other hand, if you find from the evidence that the purchase of the liverymen's judgment by Van Frank was for the use and benefit of Frank H. Dunlop, and the same was to be kept open or executed in the interest

of Dunlop, and not for Van Frank himself, then you are instructed that the constable's sale was void and Van Frank acquired no title and you should find for the plaintiff."

We deem the foregoing instruction unexceptionable. The appellant could not make either the justice's judgment, which had been assigned to him, nor his purchase at the execution sale a screen to cover up the property for the benefit of Dunlop and thereby prevent the plaintiff from utilizing his mortgage. Secret trusts and fraudulent contrivances of that character have been uniformly denounced by the courts. Irwin v. Wells, 1 Mo. 9; Pattison v. Letton, 56 Mo. App. 325; Bank v. Lime Company, 43 Mo. App. 561; Dry Goods Co. v. McLaughlin, 78 Mo. App. 578; Shanklin v. McCracken, 151 Mo. 587. We do not understand that the appellant's counsel challenges the propositions of law declared in the instruction. His exception rests on the theory that there was no evidence on which to base it. But we take a different view. There was clearly evidence tending to prove that Van Frank was acting for Dunlop instead of himself; in fact, some tending to prove that Dunlop furnished the money for the purchase of the judgment. The relationship of the parties would not be sufficient in itself to avoid the transaction for fraud, but that circumstance was material, along with other evidence in the case, to establish the real motive on which the defendant acted. Implement Co. v. Ritchie, 143 Mo. 587; Farwell v. Meyer, 67 Mo. App. 566; Robinson v. Dryden, 118 Mo. 534. While the finding of the jury may not be the one which we would have reached on the whole evidence, it is not our province to disturb it. We can not say that it was so manifestly against the weight of the testimony that it must have been dictated by passion or prejudice. The instruction requested by the appellant and refused by the court was vicious, because, it did not submit to the jury the important inquiry, whether Van Frank was a bona fide or

a fraudulent purchaser.

It should be remarked that the court expressly instructed the jury the plaintiff could not recover any interest in the property owned by Mary C. Dunlop and that the verdict found Dunlop to be the sole owner. There was evidence to support this finding. The case was tried without the commission of legal error and the judgment is affirmed. All concur.